IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PENNEY WASHINGTON, | ) |
| Plaintiff, | ) |
| | ) Case No. 17 CV 5012 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| BRIGHT START CHILD CARE & PRESCHOOL, INC. and MARKETSTAFF, INC., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Penney Washington was a teacher for defendant Bright Start Child Care & Preschool, Inc. ("Bright Start"), a daycare center for young children. Plaintiff, who is black, testified that one of her co-workers, who is white, repeatedly said that she didn't want to see plaintiff's "black ass" in the classroom. Plaintiff complained repeatedly. Nothing was done.

This employment discrimination suit arose after plaintiff saw that co-worker—Amy Dillman—gripping a young girl in a bear hug while she struggled and cried. Plaintiff reported the abuse to Bright Start's management and to the Illinois Department of Children and Family Services. Plaintiff talked about the abuse at work the next day. Bright Start's Assistant Director told her to stop. Plaintiff told her not to listen to her conversations.

Plaintiff was fired. It was not Bright Start that fired her, but defendant Marketstaff, Inc. ("Marketstaff")—a human resources consultant that hired plaintiff and mailed her paychecks. Plaintiff and Marketstaff dispute the reason for her firing. Plaintiff asserts that she was fired as retaliation for complaining about discrimination and for reporting Dillman's abuse to the

authorities. Marketstaff maintains that plaintiff was fired for insubordination and for talking about the abuse in front of Bright Start's young children.

Marketstaff moves for summary judgment on plaintiff's harassment, discrimination, and retaliation claims. Marketstaff's many defenses revolve around a single theme: Marketstaff merely processed plaintiff's paychecks and was only the messenger for Bright Start's hiring and firing decisions; Bright Start ran the show. But a reasonable jury could find otherwise. Marketstaff had the power to hire and fire plaintiff—and a jury could find that Marketstaff in fact did both. A jury could also find that Marketstaff knew or should have known more about plaintiff's discrimination and retaliation allegations than Marketstaff's moving papers suggest.

For these reasons and those that follow, the court grants in part and denies in part Marketstaff's summary judgment motion. Marketstaff is entitled to judgment on plaintiff's harassment and discrimination claims under the Illinois Human Rights Act ("IHRA"). The IHRA applies only to employers with fifteen or more employees. Marketstaff has no more than ten.

## BACKGROUND

The facts are taken from the parties' L.R. 56.1 statements and from the affidavits, depositions, and exhibits. Because plaintiff opposes summary judgment, the court construes the facts in the light most favorable for plaintiff.

**Comments from Dillman about not wanting plaintiff's "black ass" in her classroom**

Plaintiff, who is black, was an assistant teacher at Bright Start. Bright Start is a daycare center for young children. One of plaintiff's co-workers at Bright Start was Amy Dillman. Dillman was another Bright Start teacher. She is white. Dillman taught in the same classroom as plaintiff. Dillman took the morning shift; plaintiff, the afternoon shift.

Every day when plaintiff came to work, Dillman told her, "I don't want your black ass in my classroom," and "I don't even know why they hired your black ass." Plaintiff repeatedly complained to Bright Start's Assistant Director, Heidi Wood. Wood would always tell plaintiff not to worry about Dillman—"She has issues."

### Dillman abuses a child; plaintiff tells DCFS and co-workers; plaintiff gets fired

During one of plaintiff's shifts, plaintiff saw Dillman holding a four- or five-year-old girl in a forceful bear hug. The girl was struggling and crying. Plaintiff told Dillman to let her go. Dillman said, "Get out. I don't want your black ass in here."

Plaintiff left and reported the abuse to Bright Start's Assistant Director, Heidi Wood. Plaintiff asked if they should contact the Illinois Department of Children and Family Services ("DCFS"). Wood said no: "I'm not making those calls. And if you do, you won't have a job tomorrow." Plaintiff nonetheless reported the abuse to DCFS.

Plaintiff returned to work the next day. Dillman was still working in the classroom. Other Bright Start employees came by that afternoon, having heard about Dillman's actions. Plaintiff confirmed that what they heard was true. During this, Wood made herself heard over the public address system. Wood told plaintiff that she shouldn't be discussing that. Plaintiff said that Wood should not be listening to her conversations.

Wood came to plaintiff's classroom. She said that plaintiff had a call waiting for her in the administrative office. There, plaintiff received a call from Keely Sibbald—a human resources manager for Marketstaff who had participated in plaintiff's job interview. Sibbald said that plaintiff was being terminated for insubordination. Plaintiff called her a fucking bitch.

3

**Marketstaff's relationship with Bright Start**

Central to Marketstaff's summary judgment motion is its relationship with Bright Start. Marketstaff provides outsourced human resources services. Marketstaff leased employees—including plaintiff—to Bright Start.

Plaintiff was interviewed by two directors from Bright Start and one human resources manager from Marketstaff, Sibbald. Sibbald told plaintiff that she was hired. Plaintiff received an offer letter. That letter was on Marketstaff letterhead. It was sent on behalf of "Bright Start Day Care and Kindergarten" and "Marketstaff, Inc." It listed plaintiff's employer as "Marketstaff, Inc." It stated that plaintiff could be fired at any time by Marketstaff.

Plaintiff also received an employee handbook. That handbook repeatedly refers to both Bright Start and Marketstaff. The handbook states, "It is the policy of Bright Start and Marketstaff, Inc. to provide equal employment opportunity to all employees and applicants for employment." An employee who experiences discrimination "must immediately report the incident to the Human Resources Administrator, Marketstaff Inc." Plaintiff was asked to acknowledge that she "received a copy of Bright Start / Marketstaff, Inc.'s[ ] Employee Handbook." She was to "sign and date this receipt, returning it to Marketstaff, Inc."

## **DISCUSSION**

Marketstaff moves for summary judgment. Summary judgment is proper if no material fact is genuinely disputed and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–51 (1986). The court draws all justifiable inferences in favor of the non-moving party. Id. at 255.

Plaintiff's claims against Marketstaff include harassment, discrimination, and retaliation. Those claims are brought under: (1) the Illinois Human Rights Act, 775 ILCS 5/2–102 et seq.;

(2) section 1981, 42 U.S.C. § 1981; and (3) the Illinois Whistleblower Act, 740 ILCS 174/1 et seq., and the Abused and Neglected Child Reporting Act, 325 ILCS 5/1 et seq. For the following reasons, the court grants summary judgment for Marketstaff on all of plaintiff's IHRA claims except for retaliation. Marketstaff's summary judgment motion is otherwise denied.

**1 Section 1981 claims**

Under section 1981, everyone has "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." Section 1981 protects employees against race discrimination and racial harassment. Montgomery v. American Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). It also protects employees against retaliation when they oppose race discrimination in the workplace. Humphries v. CBOCS West, Inc., 474 F.3d 387, 403–04 (7th Cir. 2007).

Marketstaff moves for summary judgment on plaintiff's section 1981 claims. Marketstaff argues that under section 1981, only plaintiff's employer may be liable—and plaintiff's sole employer was Bright Start, not Marketstaff. The court disagrees. A reasonable jury could find that Bright Start and Marketstaff jointly employed plaintiff.

Marketstaff also argues that it knew nothing about Dillman's comments about not wanting plaintiff's "black ass" in her classroom. But the standard is whether Marketstaff should have known. A reasonable jury could find that Marketstaff invited plaintiff to rely on Marketstaff and Bright Start's jointly-issued employee handbook, that plaintiff reported Dillman's comments consistent with the handbook's policies, and—once plaintiff complied with the handbook—that Marketstaff was responsible for addressing plaintiff's reports.

**1.1 Was Marketstaff one of plaintiff's joint employers?**

Marketstaff's argument that it was not plaintiff's employer rests on this premise: under section 1981, only an employee's employer may be liable. That premise is debatable.

"Section 1981, unlike Title VII, does not contain the term 'employer,' and it is unclear whether a joint employer analysis should apply to § 1981 claims in the same fashion." Armour v. Homer Tree Services, Inc., No. 15 C 10305, 2017 WL 4785800, at *7 n.18 (N.D. Ill. Oct. 24, 2017) (Lee, J.). But neither plaintiff nor Marketstaff "point to any difference, nor do they dispute that an employer can face liability under § 1981 for the actions of its employees." Id. The court thus assumes that Marketstaff may be held liable under section 1981 only if it was one of plaintiff's joint employers.

Whether Marketstaff was one of plaintiff's employers depends on the "economic realities" test. That test includes five factors:

1. To what extent did Marketstaff control and supervise plaintiff? This factor "is the most important and deserving of the most weight." Frey v. Coleman, 903 F.3d 671, 679 (7th Cir. 2018).

2. Did plaintiff learn job skills from Marketstaff? "If important job skills were obtained in the putative employer's workplace, this suggests an employment relationship." Bridge v. New Holland Logansport, Inc., 815 F.3d 356, 362 (7th Cir. 2016).

3. Was Marketstaff responsible for operating costs? This factor favors an employment relationship if Marketstaff paid for such costs—equipment, fees, licenses, and labor. Love v. JP Cullen & Sons, Inc., 779 F.3d 697, 704 (7th Cir. 2015).

4. Was Marketstaff responsible for payments and benefits? This factor favors an employment relationship if plaintiff "received all paychecks and W-2s" from Marketstaff, or if Marketstaff provided "other benefits of employment, such as insurance or vacation time." Id. at 704–05.

5. How long was plaintiff expected to work for Marketstaff? This factor favors an employment relationship if plaintiff was hired as a "permanent, long-term employee,"

rather than to fill a "temporary assignment or a contract job." Frey, 903 F.3d at 680–81.

A reasonable jury could find that Bright Start and Marketstaff jointly employed plaintiff. Two factors favor finding that Marketstaff was a joint employer; two factors weigh against. But plaintiff comes out ahead on the first and most important factor. A jury could find not only that Marketstaff was authorized to hire and fire plaintiff, but that it in fact did both.

**Marketstaff's right to hire and fire plaintiff.** The most important factor favors plaintiff. That factor—Marketstaff's power to control plaintiff—"depends, to a significant degree, on the ability to hire and fire." Bridge, 815 F.3d at 361. A jury could reasonably conclude that Marketstaff was authorized to hire and fire plaintiff by making the following findings:

> Marketstaff's human resources manager—Sibbald—participated in interviewing plaintiff;
>
> At the end of that interview, Sibbald hired plaintiff over the phone;
>
> Marketstaff sent plaintiff an offer letter on Marketstaff letterhead;
>
> That offer letter listed plaintiff's employer as "Marketstaff, Inc.";
>
> Marketstaff was plaintiff's formal employer;
>
> Marketstaff was responsible for sending written notices—including dismissal letters—to employees who violate Bright Start's rules;
>
> Marketstaff could fire plaintiff at any time; and
>
> Sibbald—Marketstaff's human resources manager—fired plaintiff over the phone.

Plaintiff and Marketstaff offer competing characterizations of Sibbald's role in plaintiff's hiring interview. Plaintiff testified that Sibbald negotiated plaintiff's pay and start date; Marketstaff asserts that Sibbald merely "collect[ed] information." They also debate Sibbald's role

7

in firing plaintiff—they agree that Sibbald communicated the firing but disagree on whether Sibbald was merely a messenger for Bright Start's decision. It is enough on summary judgment that plaintiff's testimony creates genuine disputes as to these issues. In any event, there is no dispute that Marketstaff possessed formal authority to hire and fire plaintiff.

Marketstaff responds that formal authority to hire and fire is irrelevant. "[T]he Seventh Circuit's 'economic realities test' is self-explanatory"—and in reality, plaintiff was supervised by Bright Start, not by Marketstaff. True enough. But the sword of Damocles is no less a threat for not having dropped. "[T]he relevant inquiry is whether an employer has the 'right' to control and direct an employee's work, not whether the employer exercises that right." Armour, No. 15 C 10305, 2017 WL 4785800, at *7 (citation omitted), quoting Hojnacki v. Klein-Acosta, 285 F.3d 544, 551 (7th Cir. 2002). Marketstaff not only had the power to hire and fire plaintiff, it in fact did both—or at least a reasonable jury could so find.

Marketstaff also asserts that it had "no substantive role" in firing plaintiff. That decision, Marketstaff argues, was Bright Start's. Marketstaff's human resources manager "was merely a messenger." That argument runs into two problems. The first is substantive: Bright Start's firing of plaintiff would show only that Bright Start was authorized to fire plaintiff; it would not show that Marketstaff lacked such authority.

The second problem is evidentiary. Marketstaff's evidence of Bright Start's role is based on inadmissible hearsay. See Fed. R. Evid. 801; 802. In an affidavit, Marketstaff's Chief Executive Officer—Karen Felix—states that Sibbald contacted Bright Start's Chief Financial Officer. Sibbald asked the CFO "what he wanted to do with respect to Ms. Washington." According to Felix's affidavit, Bright Start's CFO told Sibbald "that he was terminating Ms. Washington's employment with Bright Start for insubordination and discussing the abuse

8

incident in front of students." The CFO "directed Marketstaff to communicate his termination decision to Ms. Washington."

The court grants plaintiff's motion to strike these statements as inadmissible. To begin with, Felix's affidavit fails to show her personal knowledge of these out-of-court statements from Sibbald and Bright Start's CFO. See Fed. R. Evid. 602. Even if Felix had such knowledge, the statements are hearsay. Marketstaff relies on them for their truth: Sibbald asked Bright Start's CFO what to do with plaintiff; the CFO decided to fire plaintiff; the CFO told Marketstaff to tell plaintiff that she was fired.

Marketstaff has waived any argument that those hearsay statements are nonetheless admissible. Marketstaff simply asserts without any analysis that Felix's "testimony is not hearsay or falls within the business records exception." Those "perfunctory and undeveloped arguments"—"unsupported by pertinent authority"—are waived. United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991).

**Job skills, operating costs, payroll, and length of employment.** The other four factors are a wash. Two weigh against finding that Marketstaff employed plaintiff. There is no evidence that plaintiff obtained job skills from Marketstaff. See Bridge, 815 F.3d at 362 ("[Obtaining] important job skills . . . in the putative employer's workplace . . . suggests an employment relationship."). And it was Bright Start that was responsible for operating costs—not Marketstaff. See Love, 779 F.3d at 704 ("Because it was EMI—rather than Cullen—that ultimately provided materials to Love, this factor . . . weighs against finding an employer-employee relationship between Cullen and Love.").

The other two factors weigh in favor of finding that Marketstaff employed plaintiff. First, Marketstaff paid plaintiff, withheld plaintiff's taxes, was responsible for plaintiff's benefits, and

9

was listed as plaintiff's employer on her Form W-2, which was filed with the Internal Revenue Service. See Worth v. Tyer, 276 F.3d 249, 264 (7th Cir. 2001) (affirming a jury finding of an employment relationship, relying in part on the plaintiff's testimony "that although she did not have taxes taken out of her paycheck, or receive benefits, she believed that both events would occur within the thirty days"). Second, Marketstaff's offer letter shows that plaintiff's job was at-will with no end date. There is no evidence that plaintiff was hired for a contract job or for a limited term. See Frey, 903 F.3d at 680 (vacating summary judgment for a putative employer and holding that this factor favored an employment relationship because the plaintiff was hired "as a long-term, at-will employee," not for "a temporary assignment or a contract job that would end at the completion of some task").

A reasonable jury could thus find that Bright Start and Marketstaff jointly employed plaintiff. The most important factor favors plaintiff: a jury could reasonably find not only that Marketstaff was authorized to hire and fire plaintiff, but that it in fact did both. Based on that finding, the jury could conclude that Marketstaff employed plaintiff.

### 1.2 Should Marketstaff have known about Dillman's discriminatory comments?

Marketstaff also argues that it cannot be liable for racial discrimination about which it knew nothing. But knowledge is not the standard. A staffing agency like Marketstaff is liable "if it knew or should have known about the client's discrimination and failed to undertake prompt corrective measures within its control." Whitaker v. Milwaukee County, Wisconsin, 772 F.3d 802, 812 (7th Cir. 2014) (emphasis omitted), quoting EEOC, No. 915.002, Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms, at 2260 (1997).

A jury could reasonably find that Marketstaff should have known about Dillman's comments that she didn't want plaintiff's "black ass" in the classroom. Plaintiff testified that she repeatedly reported Dillman's comments to Bright Start's Assistant Director. Under Marketstaff and Bright Start's jointly-issued employee handbook, that was arguably all plaintiff needed to do to bring her conflict to Marketstaff's attention.

A reasonable jury could find that Marketstaff was responsible for that handbook—a handbook that, as discussed below, contains internal contradictions. Marketstaff's name appears on the cover and on almost every other page. Much of the time, the handbook treats Marketstaff and Bright Start as one entity. The end of the handbook contains a receipt. Plaintiff was asked to sign that receipt, which included this statement: "I understand this Handbook states Bright Start / Marketstaff, Inc.['s] policies and practices in effect on the date of publication." Plaintiff was required to return the receipt to Marketstaff. From all this a reasonable jury could find that Marketstaff was responsible for the handbook and that it invited plaintiff to rely on the handbook's contents.

Start with the handbook's "Conflict Resolution Policy." Under that policy, employees must report "incident[s] of conflict"—"especially if [they] do[ ] not feel safe." The reporting process has four steps: (1) the employee may (but need not) address the conflict with her co-worker directly; (2) the employee reports the conflict to Bright Start's Director or Assistant Director (but may instead report to Marketstaff "directly"); (3) management investigates and allows the employees to state their positions; and (4) management decides on a "plan of action."

Plaintiff complied with these steps. She complied with a process set out in a handbook issued by Marketstaff. By so doing, plaintiff gave Marketstaff notice of Dillman's racially discriminatory comments. Plaintiff might have skipped the first step—which was optional—but

she complied with the second by reporting Dillman's comments to Bright Start's Assistant Director, Wood. Based on plaintiff's testimony, Wood skipped the third step and simply told plaintiff not to worry about Dillman.

Other parts of the employee handbook apparently require that plaintiff report not to Bright Start, but to Marketstaff. Take the policy on "Reporting Harassment or Discrimination." That policy instructs: "If you believe you have experienced harassment or discrimination . . . you must immediately report the incident directly to Marketstaff Inc., the Human Resources Administrator."

Dillman's comments about plaintiff's "black ass" were harassing and discriminatory. They also created a "conflict." Was plaintiff required to immediately report to Marketstaff, as the harassment and discrimination policy commanded? Or, consistent with the conflict resolution policy, was plaintiff allowed to skip Marketstaff and report to Bright Start? Plaintiff was not required to parse the handbook like a lawyer—not that a lawyer could make sense of the handbook's incoherent demands either. It is enough that plaintiff complied with at least one of the handbook's reporting policies by reporting to Bright Start's Assistant Director.

A reasonable jury could find that Marketstaff invited plaintiff to rely on Marketstaff and Bright Start's jointly-issued handbook. A jury could find that so long as plaintiff reported discrimination in a way that complied with at least one of the handbook's reporting policies, Marketstaff was responsible for addressing plaintiff's reports. And if Marketstaff failed to discharge that responsibility, a jury could find Marketstaff liable. Marketstaff's motion for summary judgment on plaintiff's section 1981 claims is thus denied.

**2**      **Illinois Human Rights Act claims**

Next, Marketstaff moves for summary judgment on plaintiff's claims under the Illinois Human Rights Act. The IHRA bars employment discrimination—but not for all employers. The employer must have fifteen or more employees. 775 ILCS 5/2–101(B)(1)(a). The IHRA also has procedural requirements. Among them: an employee may sue only after filing a charge with the Illinois Department of Human Rights ("Department"). 775 ILCS 5/7A–102(A); 102(G)(2). Marketstaff argues that: (1) it has fewer than fifteen employees (the parties agree that it never had more than ten); and (2) it lacked notice of plaintiff's allegations because plaintiff never filed a charge with the Department against Marketstaff.

On the first point, the court agrees: Marketstaff has never had more than ten employees. Plaintiff argues that because Marketstaff and Bright Start jointly employ plaintiff, Bright Start's employees ought to count towards the fifteen-employee minimum. Not so. The tests for aggregation and joint employment are different. None of the three aggregation scenarios recognized by the Seventh Circuit apply here. Marketstaff is thus entitled to summary judgment on plaintiff's claims of discrimination and harassment under the IHRA.

The fifteen-employee statutory minimum, however, does not apply to retaliation claims. For that, Marketstaff argues that plaintiff's IHRA charge failed to give reasonable notice. The court disagrees. Although plaintiff's charge named only Bright Start, it was Marketstaff's human resources manager who fired plaintiff—and Marketstaff knew that plaintiff was angry about it. Marketstaff had the chance to try conciliation if it so desired. And even if Marketstaff lacked notice, plaintiff named Marketstaff on her handwritten complainant information form. She should not be penalized for the Department's mistake in processing her form.

### 2.1 Does Marketstaff have fewer than fifteen employees?

Marketstaff has fewer than fifteen employees and thus need not comply with the IHRA's anti-discrimination provision. True, a reasonable jury could find that Marketstaff and Bright Start are joint employers. And according to an email from Marketstaff's lawyer to a Department investigator, Bright Start has "well over 15 employees." That email is admissible as an opposing party's statement. Fed. R. Evid. 801(d)(2). Adding Bright Start's employees to Marketstaff's would thus put Marketstaff over the fifteen-employee threshold.

But the joint-employer question is beside the point. Other than plaintiff, there is no evidence that Marketstaff jointly employed any Bright Start employee. "The aggregation inquiry, which asks whether <u>all</u> of an affiliate's employees should be counted toward the defendant's statutory minimum, is distinct from the economic-realities analysis, which addresses whether <u>particular</u> individuals should count because of an indirect employment relationship with the defendant." <u>Bridge</u>, 815 F.3d at 363 (emphasis in original).

Whether all of Bright Start's employees count as Marketstaff's turns instead on a different test. Under federal employment discrimination law—which "Illinois courts often consult and rely upon," <u>Carter Coal Co. v. Human Rights Commission</u>, 261 Ill. App. 3d 1, 14 (Ill. App. 1994)— aggregating the employees of separate corporate entities is proper in three situations. Those situations are: "(1) the enterprise has purposely divided itself into smaller corporations to dodge requirements imposed by the anti-discrimination laws; (2) a creditor of one corporation could, by piercing the corporate veil, sue its affiliate; or (3) the affiliate directed the discriminatory act or practice of which the plaintiff complains." <u>Bridge</u>, 815 F.3d at 364, citing <u>Papa v. Katy Industries, Inc.</u>, 166 F.3d 937, 940–42 (7th Cir. 1999). In these three situations, "the policy

behind the exemption of the tiny employer is vitiated by the presence of an affiliated corporation." Papa, 166 F.3d at 940.

None of the three situations apply. There is no evidence that Bright Start and Marketstaff divided themselves to evade anti-discrimination laws and no evidence that either was the other's alter ego. Nor is there evidence that Marketstaff directed Bright Start's allegedly discriminatory acts: plaintiff does not dispute that she "never complained to Marketstaff about alleged discrimination by anyone at Bright Start."

Marketstaff is thus entitled to summary judgment on plaintiff's claims of harassment and discrimination under the IHRA. Without Bright Start's employees, Marketstaff has fewer than fifteen employees and need not comply with the IHRA's anti-discrimination provision.

### 2.2 Did plaintiff's IHRA charge give Marketstaff reasonable notice?

Still, Marketstaff agrees that even employers with fewer than fifteen employees must not retaliate against employees for complaining about discrimination. See Dana Tank Container, Inc. v. Human Rights Commission, 292 Ill. App. 3d 1022, 1026 (Ill. App. 1997) ("[W]e find that the legislature intended section 6–101(A) [the IHRA's anti-retaliation provision] to apply to employers with fewer than 15 employees."). The court thus considers whether plaintiff's IHRA charge gave Marketstaff reasonable notice—whether it was "in such detail as to substantially apprise" Marketstaff "as to the time, place, and facts surrounding the alleged civil rights violation." 775 ILCS 5/7A–102.

The parties agree that plaintiff went to the Illinois Department of Human Rights and, without a lawyer, filled out a complainant information sheet on which she named Marketstaff as a respondent. Plaintiff also wrote that "Ms. Keely Syb [illegible]" from "Marketstaff corporate

office" gave "no reason" for her firing. Despite plaintiff's references to Marketstaff and to a Marketstaff employee, the charge prepared by the Department omitted Marketstaff altogether.

Even though plaintiff's charge omitted Marketstaff, Marketstaff nonetheless had reasonable notice of her allegations. Marketstaff represented to plaintiff that it was her employer in many documents—among them, her offer letter, her employee handbook, and her non-compete agreement. Marketstaff participated in plaintiff's hiring and firing. Marketstaff knew that plaintiff had filed a charge against Bright Start. Marketstaff, as part of the Department's investigation, complied with document requests. Marketstaff knew that plaintiff took her firing poorly; she called Marketstaff's human resources manager a bitch. Marketstaff knew all this long before plaintiff sued in this court and could have tried conciliation if it so desired. See Nieman v. Hale, 541 F. App'x 693, 698 (7th Cir. 2013) (unpublished) (holding that a charge gave reasonable notice to an unnamed defendant because, among other reasons, that defendant "surely would have understood from the charge that [the plaintiff] believes he did not get the job . . . because of his prior litigation and not because he is less qualified than the other applicants").

Even if plaintiff's charge failed to give Marketstaff reasonable notice, the complainant information sheet that she filled out by hand surely would have succeeded but for the Department's mistake in preparing her charge. Plaintiff should not be penalized for that. It is "the Department's responsibility to correctly process a complainant's CIS and promptly serve notice of the charge on the respondent." Chicago Board of Education v. Cady, 369 Ill. App. 3d 486, 493–94 (Ill. App. 2006) (excusing the omission of a defendant and reasoning in part that the plaintiff's "CIS contained clear references to Taft High School and Cunningham, yet the Department failed to include the Board in its formal charges"). And a plaintiff "must not lose the right to a hearing on [her] claim due to the failure of the Department to fulfill its statutory

16

obligations." Muraoka v. Human Rights Commission, 252 Ill. App. 3d 1039, 1049 (Ill. App. 1993) (similar). See also Fennell v. Royal Management Corp., No. 2-17-0220, 2017 WL 6730063, at *5 (Ill. App. Dec. 29, 2017) (unpublished) (excusing the omission of a defendant and reasoning in part that the plaintiff "did not realize that there was a difference" between two companies, which "never became an issue until plaintiff filed [an] action in the circuit court").

For these reasons, Marketstaff has fewer than fifteen employees and need not comply with the IHRA's anti-discrimination provision. Marketstaff is entitled to summary judgment on plaintiff's claims of harassment and discrimination under the IHRA.

But the fifteen-employee minimum does not apply to claims brought under the IHRA's anti-retaliation provision. Marketstaff is not entitled to summary judgment on that claim. Even though plaintiff's IHRA charge omitted Marketstaff, Marketstaff still had notice of plaintiff's allegations. And in any event, plaintiff named Marketstaff on her complainant information sheet. She should not be penalized for the Department's mistake in preparing her charge.

### 3  Retaliation claims under the Whistleblower Act and the Abused Child Reporting Act

Finally, Marketstaff moves for summary judgment on plaintiff's retaliation claims under two state statutes: the Whistleblower Act, 740 ILCS 174/1 et seq., and the Abused and Neglected Child Reporting Act, 325 ILCS 5/1 et seq. Both statutes bar employers from retaliating against employees who report child abuse.

Marketstaff is not entitled to summary judgment on either claim. Marketstaff argues that: (1) it did not employ plaintiff; (2) it did not decide to fire plaintiff; and (3) it did not know about plaintiff's report to the Illinois Department of Children and Family Services. The first two reasons are unpersuasive. As discussed, a jury could find that Marketstaff employed plaintiff and that Marketstaff decided to fire her.

17

The third reason is also unpersuasive. Even if Marketstaff knew nothing about plaintiff's report to DCFS, a jury could reasonably find that Bright Start's Assistant Director—Wood—was worried that plaintiff <u>might</u> report Dillman's abuse to DCFS. A jury could draw that inference based on plaintiff having raised the possibility in their meeting. If true, that child abuse report could harm Bright Start's reputation. A false report could lead to Dillman suing plaintiff for defamation, with Bright Start caught in the messy middle. A jury could reasonably find that Wood tried to reduce the likelihood of these undesirable outcomes by threatening plaintiff: "I'm not making those calls. And if you do, you won't have a job tomorrow."

Wood testified that by the next day—before plaintiff was fired—Marketstaff "had already been involved." From this testimony a jury could reasonably infer that Wood had told Marketstaff about her concerns and that Marketstaff shared those concerns. The jury could infer that Marketstaff and Bright Start decided to fire plaintiff on the pretext that they were concerned about plaintiff mentioning the abuse in front of Bright Start's students. What Marketstaff and Bright Start really wanted—at least, a reasonable jury could so find—was to build a record for discrediting plaintiff should she report that a Bright Start teacher abused a young student and that Bright Start tried to cover it up.

Of course, Marketstaff denies that Wood made any such threat and denies that there was any such conspiracy. Wood testified that she herself reported to DCFS the day before plaintiff was fired. A jury might well believe Wood over plaintiff and find that far from trying to cover up the abuse, Bright Start and Marketstaff tried to get ahead of it. Or a jury might find that Wood's threat had nothing to do with plaintiff's firing. But none of that is summary judgment material.

## CONCLUSION

For these reasons, the court grants summary judgment to defendant Marketstaff, Inc. on four of plaintiff Penney Washington's claims under the Illinois Human Rights Act: (1) harassment based on race; (2) discrimination based on race; (3) harassment based on age; and (4) discrimination based on age. Marketstaff's summary judgment motion [Doc. 74] is otherwise denied. The court partially grants plaintiff's motion [Doc. 81] to strike Marketstaff's statement of facts and strikes paragraphs 54 and 55. Plaintiff's motion to strike is otherwise denied as moot. The court will set a status hearing after the COVID-19 emergency has abated.

**ENTER:** **March 27, 2020**

_____
**Robert W. Gettleman**
**United States District Judge**